Sánchez Martínez, Juez Ponente
*891 TEXTO COMPLETO DE LA SENTENCIA
La Sra. Diana Cardona (la Sra. Cardona) nos solicita la revisión administrativa de una resolución dictada, por la Junta de Apelaciones sobre Construcciones y Lotificaciones (J.A.C.L.) el 2 de mayo de 1997, en la cual: dicha agencia revocó en un recurso de apelación a la Administración de Reglamentos y Permisos (A.R.P.E.). Al revocar la resolución de la A.R.P.E., la J.A.C.L. autorizó un anteproyecto de construcción sometido por el Sr. Marcus Santiago Hernández (el Sr. Santiago), que la A.R.P.E. había denegado en una orden dictada en reconsideración por la A.R.P.E. el 30 de mayo de 1996. El anteproyecto en cuestión había sido presentado por el Sr. Santiago con el propósito de legalizar una construcción que estaba realizando sin haber obtenido los. permisos necesarios.
Por las razones que a continuación señalamos y luego de considerar la totalidad del expediente, se expide el auto, se revoca la resolución recurrida y se devuelve el caso a la A.R.P.E. para que dicha agencia reevalúe a nivel técnico la construcción efectuada por el Sr. Santiago, otorgando el correspondiente permiso para la construcción del primer nivel que está conforme al Reglamento de Zonificación, y refiera la violación existente a nivel de segunda planta a la división legal de dicha agencia, para la acción correspondiente.
I
El Sr. Santiago es propietario de una residencia ubicada en la calle Plaza 6 Núm. SD-53 en la urbanización Mansión del Sur, en Cataño. La Sra. Cardona es propietaria de la residencia localizada en la calle Plaza 5 Núm. SD-60 de la misma urbanización. La propiedad del Sr. Santiago colinda, en su patio lateral derecho, con el patio posterior de la Sra. Cardona.
El recurso ante nos fue presentado originalmente por la Sra. Cardona y el Sr. Carlos Cajigas (Sr. Cajigas), propietario de la residencia localizada en la calle Plaza 5 Núm. SD-61, un solar vecino del de la Sra. Cardona que colinda también, por su patio trasero, con el patio lateral derecho del solar del Sr. Santiago. El Sr. Cajigas desistió posteriormente del recurso por haber vendido su propiedad.
La urbanización Mansión del Sur está ubicada en un distrito de zonificación R-l, pero fue construida con *892 parámetros de un distrito R-3. La misma está organizada en un esquema de calles sin salida -conocidas también como dead-end o cul-de-sac— que puede dar origen, como en este caso, a solares de muy distinta situación o relación con la calle. Mansión del Sur, de acuerdo a la información que consta en nuestro expediente, es una de tres secciones de la urbanización La Mansión, desarrolladas bajo un esquema similar —Mansión del Sur, Mansión del Norte y Mansión del Río- en las cuales parece regir un esquema similar de restricciones en equidad. 
La residencia del Sr. Santiago está localizada en el extremo de una de las calles sin salida, sin tener en realidad frente a la calle. Se trata de una estructura de dos plantas que incluía originalmente, cuando el Sr. Santiago la adquirió en 1986, sala, comedor, salón familiar, tres dormitorios y dos y medio baños. En 1996, el Sr. Santiago comenzó a realizar sin obtener los correspondientes permisos una ampliación a la misma, consistente en la construcción, en el patio lateral derecho en que se encontraba la marquesina, posterior y adherida a ésta, de una estructura de dos niveles que albergaba una biblioteca y un salón de estudio en el primer nivel y, en el segundo nivel, dos dormitorios. Como resultado de la construcción, quedaba en la colindancia del Sr. Santiago con los solares de la Sra. Cardona, una pared ciega de unos dieciocho pies (181-011) de alto. 
II
La revisión que nos ocupa se origina en dos querellas presentadas ante la A.R.P.E. La primera querella fue presentada el 21 de diciembre de 1995 por la Sra. Cardona. Esta alegó que una ampliación que el Sr. Santiago estaba realizando a su residencia —que entorpecía la ventilación a los dormitorios de su residencia— se estaba construyendo sin haber obtenido los permisos requeridos de A.R.P.E. ni de la Junta de Residentes de la urbanización. Véase el expediente de la A.R.P.E. en el caso 95-14-G-578-BPQ. La segunda querella fue presentada por el Sr. Cajigas a principios de enero de 1996. 
El 4 de enero de 1996, la A.R.P.E. emitió, de acuerdo al expediente del Sr. Cajigas, una orden de paralización, utilizando para ello el formulario ARPE-15.14 (Oct. 1976).
El 17 de enero de 1996, la A.R.P.E. le envió una comunicación al Sr. Santiago donde le informó que había efectuado una inspección a la obra que estaba construyendo y le indicó que sus inspectores habían encontrado violaciones a las Subsecciones 3.02 (construcción sin permiso) y 13.09 (patio lateral derecho) del Reglamento de Zonificación, supra. En dicha carta se indica lo siguiente:

“Este caso se mantendrá pendiente por quince (15) días [a] partir de la fecha de esta carta en espera de que se legalice o conforman [sic] las obras o se presente evidencia, [sic] de la legalidad de los mismos [sic]. Si dentro de dicho período de tiempo no se actúa para aclarar este asunto, se tomará la acción que amerite el caso. ”

El 2 de febrero de 1996, el Sr. Santiago presentó ante la A.R.P.E., a través del Ing. Felipe Muñoz Almodóvar, una solicitud de anteproyecto —denominada “Consulta sobre Conformidad con el Reglamento de Zonificación”— para legalizar las obras que estaba llevando a cabo en la propiedad. Con la solicitud de anteproyecto, el Sr. Santiago incluyó, además de los documentos requeridos, copia de las cartas de diecinueve (19) vecinos inmediatos que no tenían objeción al mismo.
El día anterior a la presentación del. anteproyecto, 1 de febrero de 1996, la Sra. Cardona y el Sr. Cajigas le habían enviado una nueva comunicación a la A.R.P.E. donde le informaban que, a pesar de la orden de paralización, el Sr. Santiago continuaba construyendo. El 20 de febrero de 1996, el jefe de la Unidad de Querellas le informó al Sr. Cajigas que el Sr. Santiago había sometido una solicitud de anteproyecto.
*893 El 3 de mayo de 1996, la A.R.P.E. emitió un Informe sobre Acuerdo Adoptado por el Director Regional, mediante el cual denegó la variación solicitada. El Sr. Santiago solicitó reconsideración, que la agencia denegó mediante orden del 30 de mayo de 1996.
El Sr. Santiago apeló entonces a la J.A.C.L., entidad que, luego de celebrar una vista el 25 de noviembre de 1996, emitió el 2 de mayo de 1997 la resolución de la cual se nos solicita revisión. En dicha resolución, como ya indicamos, se autorizó el anteproyecto, concediendo la variación que la A.R.P.E. había denegado.
Una vez presentado el recurso ante nos, solicitamos a la J.A.C.L. que elevara el expediente original y concedimos término al Sr. Santiago para que mostrara causa por la cual no deberíamos expedir el recurso. Este, compareció oportunamente. Además celebramos una vista oral. Estamos en posición de resolver.
III
La Sra. Cardona señala que se equivocó la J.A.C.L. (1) al revocar a la A.R.P.E. y autorizar el anteproyecto, cuando el dueño de éste no demostró que la aplicación literal del reglamento resultaría en una confiscación, como exige la Sub-sección 98.02 del Reglamento de Zonificación, supra\ y (2) al autorizar el anteproyecto sin que el Sr. Santiago probara que la variación solicitada cumplía con la Sub-sección 98.06 del citado Reglamentos de Zonificación.
Alega la Sra. Cardona en su solicitud de revisión que la Sub-sección 98.02 del Reglamento de Zonificación dispone que el propósito de otorgar las variaciones es evitar que la aplicación literal del reglamento resulte en una confiscación del disfrute de la propiedad y que quien solicita la variación tiene la obligación de probar dicho hecho, lo cual no se hizo. Aduce igualmente que, una vez se prueba que la aplicación literal resulta confiscatoria, es necesario probar que la variación solicitada cumple con la regla del comportamiento del sector que expresa la Sub-sección 98.06 del Reglamento de Zonificación. Señala además la determinación de la LA. C.L. no está sostenida por evidencia sustancial y que dicho organismo aquilató la prueba arbitrariamente.
En su escrito en oposición, el Sr. Santiago alega que la variación solicitada en este caso es una “variación en área” y no una “variación en uso” y que, por lo tanto, es suficiente probar que se priva innecesariamente aí dueño del disfrute total de un uso permitido. Indica que la Sub-sección 98.02 citada se refiere únicamente a las variaciones en uso, y que por lo tanto, no aplica a la variación solicitada. Señala, además, que tratándose la J.A. C.L. de un organismo administrativo especializado y estando basada la determinación tomada por dicho organismo en la totalidad del expediente, un tribunal no debe sustituirla, a menos que la misma sea irrazonable, ilegal, caprichosa o haya constituido un abuso de discreción.
Por estar los dos errores señalados íntimamente relacionados, los discutiremos en conjunto. Antes de discutirlos, sin embargo, analizaremos ciertos aspectos que es conveniente examinar.
IV
En primer lugar, deseamos examinar si ambas entidades, la A.R.P.E. y la J.A.C.L., tenían facultad en ley para considerar la variación solicitada.
Existen varias disposiciones en la Ley Orgánica de la Administración de Reglamentos y Permisos que facultan a dicha agencia a eximir del cumplimiento estricto con los reglamentos. Por un lado, el Administrador de A.R.P.E. está facultado por ley para “[djispensar el cumplimiento de los requisitos de los Reglamentos de Planificación de conformidad con lo establecido en los mismos y en [dicho] Capítulo, asegurando siempre que dicha facultad no se utilice con el propósito o resultado de obviar las disposiciones reglamentarias vigentes ”. 23 L.P.R.A. sec. 71d (Supl. 1998).
*894 A la misma vez, la Sec. 71i de dicha ley dispone:

“El Administrador podrá dispensar del cumplimiento de los requisitos de los Reglamentos de Planificación de conformidad con lo establecido en los mismos, en casos donde la aplicación literal de sus disposiciones resultare en la prohibición o restricción irrazonable del disfrute de una pertenencia o propiedad y se demuestra a su satisfacción que dicha dispensa aliviará un perjuicio claramente demostrable, pudiendo imponer las condiciones que el caso amerite para beneficio del interés público.

El Administrador podrá, además, conceder todas aquellas concesiones y autorizaciones directas que se disponga en los Reglamentos de Planificación siguiendo el procedimiento establecido en los mismos.

De las determinaciones del Administrador sobre solicitudes de autorizaciones directas o concesiones podrá apelarse a la Junta de Apelaciones sobre Construcciones y Lotificaciones. 23 L.P.R.A. sec. 71i.”

El Reglamento de Procedimientos Adjudicativos de la A.R.P.E. reconoce además, en la Sec. 19, la facultad del administrador de dicha agencia para otorgar variaciones y excepciones.
Mediante la Orden Administrativa ARP-89-4, el administrador de la A.R.P.E. delegó en los directores regionales y subregionales, la facultad de considerar solicitudes de variaciones y excepciones. Las disposiciones de la citada orden administrativa sobre los criterios a tenerse en cuenta al considerar dichas solicitudes coinciden prácticamente punto por punto con los indicados en la See. 98 del Reglamento de Zonificación, supra.
La Junta de Apelaciones sobre Construcciones y Lotificaciones, a su vez, es creada por la Sec. 72b de la referida ley, 23 L.P.R.A. sec. 72b. Dicha junta tiene, entre otras facultades y deberes, la “facultad para entender exclusivamente en aquellos casos en que una parte directamente interesada o afectada por actuaciones, determinaciones o resoluciones de la [A.R.P.E.] en relación con: permisos de construcción y de uso de edificios,... [y los] casos donde se solicite la dispensa del cumplimiento de requisitos de un Reglamento de Planificación mediante una concesión o autorización directa”. 23 L.P.R.A. sec. 72c (a). Más adelante, la misma sección de la ley indica:

“(c) La Junta de Apelaciones-

La Junta de Apelaciones podrá decretar a nivel apelativo cualquier orden, requerimiento, resolución o determinación que a su juicio deba dictarse: (1) por motivo de perjuicios ocasionados por circunstancias especiales o extraordinarias cuando la actuación o resolución de la cual se apela resulta en una prohibición o restricción irrazonable del derecho del apelante al uso y disfrute de su propiedad; (2) por denegaciones viciosas para emitir los permisos necesarios; o (3) por cualesquiera otras razones autorizadas en los reglamentos de la Junta de Planificación y de la [A.R.P.E. ]..., y, a tal fin, la Junta de Apelaciones tendrá los mismos poderes del funcionario u organismo de cuya actuación se apela... ”. 23 L.P.R.A. 72c (c).
Vemos, pues, que ambas entidades, la A.R.P.E., en jurisdicción original podríamos decir, y la J.A.C.L., en su capacidad revisora, están facultadas por ley para autorizar las variaciones —también llamadas concesiones — .
En el caso de autos, por lo tanto, ambas entidades estaban facultadas para considerar y otorgar la variación solicitada.
*895 V
Antes de analizar las controversias centrales al recurso que nos ocupa, debemos además examinar brevemente tres aspectos que se han señalado en distintos momentos del proceso como de aplicación al caso de autos, pero que, por las razones que a continuación exponemos, hemos descartado. Veamos.
La doctrina del daño autoinfligido.
La doctrina del daño autoinfligido fue adoptada en Puerto Rico por el Tribunal Supremo en Asoc., C. D. Octubre v. J.A.C.L., 116 D.P.R. 326, 334 (1985). Dicha doctrina impide, como regla general, “la solicitud y concesión de una variación en casos en que el promovente —conociendo las limitaciones impuestas por los requisitos de zonificación- se coloca irrazonablemente en una posición que le ocasiona perjuicio irrazonable”. Asoc. Res. Baldrich, Inc. v. J.P. de P.R., 118 D.P.R. 759, 772 (1987). Esta regla, ha indicado el Tribunal Supremo, es aplicable a cualquier peticionario, haya adquirido la propiedad con pleno conocimiento de la restricción o no, pues se entiende que tenía que haber conocido dicha restricción. A.R.P.E. v. J.A.C.L., 124 D.P.R. 858, 866 (1989).
En el caso de autos, se podría argumentar que el Sr. Santiago conocía —desde que adquirió la propiedad en el 1986— que existían, por un lado, las restricciones en equidad y, por otro, que los parámetros de un solar R-3, de acuerdo al Reglamento de Zonificación, impedían la construcción en un segundo nivel, sobre la marquesina, cuando ésta ocupaba un patio lateral. La situación, sin embargo, no resulta tan simple, a nuestro entender.
En primer lugar, no tenemos evidencia fehaciente de que las restricciones existan o que estén en vigor. Como indicamos anteriormente, tenemos copia de unas restricciones que aplican en realidad a otra urbanización. No se incluyó, en ninguno de los expedientes examinados, copia de la escritura de segregación o compraventa de la propiedad del Sr. Santiago en que se aluda de algún modo a dichas restricciones. 
Por otro lado, a pesar de que el Tribunal Supremo indica en Asoc. Res. Baldrich, Inc. v. J.P. de P.R., supra, que en dicho caso, la doctrina del daño autoinfligido impide la solicitud y concesión de una variación, por conocer el promovente, en dicho caso, las limitaciones que imponía la zonificación, entendemos que la situación en dicho caso es distinguible del caso que nos ocupa. En Asoc. Res. Baldrich, Inc. v. J.P. de P.R.., supra, se trataba de un distrito residencial y lo que se buscaba era una variación en uso. En el caso que nos ocupa, la variación solicitada es una de las llamadas “de área”, en la que se solicitaba únicamente variación en cuanto al patio lateral derecho. Se considera, en los casos de variaciones en uso, a diferencia de nuestro caso, que la razón por la cual un adquirente compra una propiedad residencial y luego solicita una variación en uso, es para aprovecharse del menor precio de la propiedad residencial, razón por la cual el Tribunal Supremo le ha aplicado la doctrina en cuestión. Véanse, Asoc., C. D. Octubre v. J.A.C.L., supra; A.R.P.E. v. J.A.C.L., supra; Fuertes, Guillermety v. A.R.P.E., 130 D.P.R. 9711 980 (1992); Fuertes y otros v. A.R.P.E., 134 D.P.R. _ (1993), 93 J.T.S. 165, a la pág. 11388. 
En el caso de las variaciones en uso, de hecho, el Reglamento de Zonificación incorpora la doctrina del daño autoinfligido, en el inciso 2 de la Sub-sección 98.05, Variaciones en uso, que indica:

“Variaciones en Uso - La Junta o la Administración, cada cual en su ámbito...

1....

2. Las razones por las cuales ningún uso permisible es factible en la propiedad sin la variación deben ser únicas a la misma y no una característica general del distrito o del sector del distrito donde ubica. No podrán 
*896
haber sido causados por el dueño.

3....".

En el caso de autos, para comenzar, el Sr. Santiago había sido propietario de la residencia durante diez años. No la adquirió con un propósito de explotación comercial o de variar el uso designado para su beneficio económico. Aparentemente, es cuando crece la familia que decide ampliar la residencia. La variación solicitada era solamente en cuanto al patio lateral derecho; no alteraba el uso de la estructura. Entendemos que, en Puerto Rico, la doctrina del daño autoinfligido no es de aplicación a este caso. 
Las servidumbres en equidad.
En relación a las servidumbres en equidad es preciso señalar varios puntos adicionales.
En primer lugar, las referidas restricciones en equidad sólo se mencionan en la Solicitud de Revisión. Un recurrente no puede levantar por primera vez en el proceso apelativo lo que no fue señalado ante la agencia administrativa. Garaje Rubén, Inc. v. Tribunal Superior, 101 D.P.R. 236, 242 (1973).
En segundo lugar, debemos recordar que, de acuerdo a la jurisprudencia, correspondía a los vecinos del área, de desear “hacer efectivos sus derechos e impedir las violaciones a las limitaciones impuestas”, presentar la acción civil correspondiente ante el Tribunal de Primera Instancia. Asoc. V. Villa Caparra v. Iglesia Católica, 117 D.P.R. 346, 353-354 (1986). En otras palabras, son dos procesos distintos. La A.R.P.E. o la Junta de Planificación, al considerar una variación, utilizará sus propias disposiciones estatutarias o reglamentarias pero no tiene que incluir, como fundamento para su decisión, unas posibles restricciones en equidad. Estas deberán ser examinadas, de acuerdo a la doctrina adoptada por el Tribunal Supremo de Puerto Rico, en el foro judicial correspondiente. Véase, Luan Investment Corp. v. Román, 125 D.P.R. 533, 551-552 (1990).
Es decir, que, en el caso de autos, los vecinos del lugar tenían a su disposición una variedad de recursos para hacer valer sus derechos ante lo que consideraban —y aparentemente era— una construcción ilegal. Podían someter la querella ante la A.R.P.E., como lo hicieron, pero podían haber acudido directamente al tribunal, mediante el recurso adecuado para hacer valer las restricciones. Podían igualmente utilizar el procedimiento prescrito por la Ley Orgánica de la A.R.P.E., 2 3 L.P.R.A. sec. 72. 
La orden de paralización.
El procedimiento de paralización al que se refiere el formulario utilizado en este caso, A.R.P.E. 15.14, está detallado en varias disposiciones del Reglamento de Procedimientos Adjudicativos de la Administración de Reglamentos y Permisos.
En primer lugar, la Sec. 17, Sub-sección 17.09, de dicho reglamento dispone:

“Paralización de Obras Ilegales. - A los efectos de dar uniformidad al trámite de la paralización de obras ilegales se establece que el propósito del uso del formulario ARPE 15.14 (Orden de Paralización) es dual: proveer un récord fidedigno y permanente de la actuación del personal de inspección de la oficina Regional o Subregional cuando detecta por primera vez una construcción sin permiso o en violación al permiso y plano o croquis aprobado y a la vez ofrecer un mecanismo para detener de inmediato cualquier acción impro edente de construcción. Todo inspector en funciones mantendrá siempre en su poder suficientes copias de esta forma 
*897
y por la presente se les faculta a emitir las referidas órdenes de paralización.

(1) Violaciones a Planos Aprobados.

(2) Violaciones en donde no existan Planos Aprobados. - Se procederá a emitir una orden de Paralización inmediatamente.

(2) Complementación del Formulario ARPE 15.14 (Orden de Paralización) - Todos los espacios del formulario serán llenados y las direcciones serán bien precisas...
La descripción de la violación se hará en forma precisa y clara citando las disposiciones de leyes y reglamentos infringidas. Se dará información sobre tamaño, material, uso, separación de colindancias (cuando sea esencial), y en general todos aquellos aspectos sobresalientes de la violación,"
El Reglamento de Procedimientos Adjudicativos citado dispone además, en la Sección 5.00, Inspecciones, subsección 5.02, lo siguiente:

“Libre Acceso a las Obras. - Los funcionarios e inspectores de esta Administración tendrán libre acceso á las obras que se ejecuten en el Estado Libre Asociado de Puerto Rico, sujetas a su jurisdicción. Cuando adviertan una obra ilegal o defectuosa, construida en violación de alguna disposición de tales leyes y reglamentos o del permiso otorgado, podrán ordenar la inmediata paralización de la parte correspondiente de la obra, hasta tanto sea subsanada la condición ilegal o defectuosa. ”

La Sub-sección 5.03, de hecho, dispone que los funcionarios e inspectores de la agencia “tendrán derecho a entrar sin previa orden judicial a cualquier propiedad o estructura”.
Dicho reglamento dispone, además, en la Sub-sección 17.07:

“Referimiento de Querellas para Acciones Judiciales. - De comprobarse que el infractor no tiene la intención de eliminar o conformar las violaciones incurridas, el trámite normal de acción será referir el caso a la consideración de la Oficina de Asesoramiento Legal para la acción administrativa y judicial correspondiente. Esta acción será notificada por escrito a las partes. ”

En otras palabras, una vez el inspector de la agencia detecta la violación, está facultado —no obligado— a emitir la orden de paralización que provee la Sub-sección 5.02, “hasta tanto sea subsanada la condición ilegal o defectuosa”. Normalmente, una vez el infractor demuestra a la agencia su intención de conformar la constmcción con los parámetros existentes, ésta detiene el proceso administrativo de la querella. Es de notar que este procedimiento de paralización es diferente de aquel que incluye la Ley Orgánica de la A.R.P.E., y que faculta a ésta a solicitar de los tribunales, mediante un procedimiento de tipo sumario, órdenes de paralización provisional o permanente de obras o de usos que constituyan violaciones a la ley. Véanse, 23 L.P.R.A. sec. 72 y A.R.P.E. v. Rodríguez, supra, a la pág. 809.
VI
Analicemos ahora nuestras controversias centrales. Examinaremos en primer lugar la determinación emitida por la A.R.P.E. y, a continuación, la resolución de la J.A.C.L. Por razones distintas en cada caso, entendemos que ambas determinaciones fueron incorrectas.
Es sabido que, en derecho administrativo, los tribunales tienen la obligación dé guardar la más profunda *898 deferencia a las agencias administrativas en los asuntos ante su consideración en las materias pertinentes, sobre las cuales dichas agencias tienen una más vasta y profunda experiencia y conocimiento. El Tribunal Supremo ha sostenido reiteradamente “que las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto y que su revisión judicial se limita a determinar si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción”. Fuertes y otros v. A.R.P.E., supra, a la pág. 11385, citando a Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975). Esa deferencia, sin embargo, no implica que los tribunales renuncien a su función revisora “en instancias apropiadas y meritorias, pues en ‘el supuesto de que la agencia administrativa hubiese cometido algún error en la aplicación de la ley, esa actuación no sería válida”. Fuertes y otros v. A.R.P.E., supra, a la pág. 11386, citando a Del Rey v. J.A.C.L., 107 D.P.R. 348, 355 (1978).
Aunque al revisar determinaciones de la agencia administrativa, “la función judicial está limitada a ‘cuestiones de derecho’[,]... constituye una ‘cuestión de derecho’ determinar si las conclusiones de hecho que sirven de base a la orden administrativa, están sostenidas en evidencia sustancial”. López v. Junta de Planificación, 80 D.P.R. 646, 672 (1958). No se debe alterar las determinaciones de la agencia si éstas se basan en evidencia sustancial que surja del récord. Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. _ (1997), 97 J.T.S. 34, a la pág. 729. Y evidencia sustancial es “aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión”. Hilton Hotels v. Junta Salario Mínimo, 74 D.P.R. 670, 683 (1953).
Existiendo, como existe, esa presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, “la persona que alegue lo contrario tendrá que presentar evidencia suficiente para derrotar tal presunción, no pudiendo descansar únicamente en meras alegaciones”. Comité de Vecinos Pro-Mejoramiento. Inc. v. Junta de Planificación, _ D.P.R. _ (1999), 99 J.T.S. 32, a la pág. 732.
En ocasiones, las agencias parecen obviar aquello que debería resultarles evidente. Para resolver si la determinación de la A.R.P.E. fue correcta, debemos examinar las secciones pertinentes del Reglamento de Zonificación.
En primer lugar, tenemos que señalar que, en el caso de autos, la construcción de las dependencias anexas y posteriores a la marquesina existente en el patio lateral derecho, a nivel de primera planta, están permitidas por el Reglamento de Zonificación, supra, a través de las Subsecciones 78.01, 78.04, 77.04 y 77.05. Veamos.
La Sub-sección 78.01 establece:

“Disposición General - En los distritos residenciales se permitirá una marquesina para el estacionamiento de automóviles, incluyendo facilidades de terraza, lavandería, dormitorio, baño, cocina o comedor como parte integrante de la misma, unida al edificio principal de uno de los patios laterales requeridos, cuando ésta cumpla con las disposiciones de la Sección 77.00 de este reglamento, y con los requisitos establecidos en esta Sección. ”

De otro lado, la referida See. 77 incluye aspectos tales como ancho mínimo del espacio de estacionamiento (77.01), longitud mínima del espacio para estacionamiento (77.02), cerramientos de las partes delantera, lateral y trasera (77.03-77.05) y otros. En específico, las subsecciones pertinentes a nuestro caso son la 77.04 y 77.05, que disponen, respectivamente, que “[l]a parte lateral de una marquesina en su lado opuesto al edificio principal podrá ser cerrada” y que “[l]a parte posterior de una marquesina podrá cerrarse: [¶]... ]; o con un ventanal; [¶]... ] En ningún caso se permitirá la instalación de ventanas en esta parte de la marquesina a una *899 separación menor de veinte (20) pulgadas de la línea de la colindando lateral del solar”.
La Sub-sección 78.04 del Reglamento de Zonificación dispone a su vez lo siguiente:

“Longitud para Marquesinas Dentro de uno de los Patios Laterales Requeridos en un Distrito Residencial. - La longitud de la losa de techo podrá ser igual pero no mayor del largo total del edificio incluyendo los aleros. No se permitirá el que la marquesina se extienda dentro de los patios delanteros o posterior requeridos. ”

De otro lado, la Sub-sección 13.09 del Reglamento de Zonificación dispone:

“Patios Laterales en Distritos R-3. - Se requerirán dos (2) patios laterales cada uno con ancho no menor de dos (2) metros y cuya suma no será menor de cinco (5) metros. Todo patio lateral tendrá el ancho establecido anteriormente o un ancho no menor de una quinta (1/5) parte de la altura del edificio, cual fuere mayor...”.

En el caso en cuestión, la residencia del Sr. Santiago tiene un patio lateral izquierdo con un ancho de dos punto cero uno metros (2.01 m.) y un patio lateral derecho con un ancho de cuatro punto treinta y un metros (4.31 m.). Dicho patio lateral derecho estaba ocupado, a tenor con las disposiciones de las Sees. 77 y 78 citadas, por la marquesina existente. Esa era la situación antes de la construcción.
A tenor con la Sub-sección 78.04 citada, la marquesina de la residencia del Sr. Santiago podía extenderse a todo lo largo de la residencia existente, incluyendo los aleros, y no se hubiera infringido el reglamento ni se hubiera requerido una variación. A tenor, además, con la Sub-sección 78.01 citada, dicha marquesina podía incluir “facilidades[sic] de terraza, lavandería, dormitorio, baño, cocina o comedor como parte integrante de la misma”, y tampoco se hubiera requerido variación, si no un simple permiso de construcción. Entendemos que si cualificaban todos los tipos de habitaciones citados, la biblioteca y el salón de estudio también podían incluirse, por ser usos evidentemente residenciales, muy similares a lo que sería, de hecho, por ejemplo, un dormitorio, y no generar, para efectos de los vecinos, más midos, olores o riesgo de fuego, de lo que podrían ocasionar un baño o una cocina. El hecho de que no se haga ninguna referencia a dichas disposiciones reglamentarias en los informes técnicos de la A.R.P.E., ni en la denegación del anteproyecto, constituye a nuestros ojos, un error.
Además, la tercera conclusión —la relativa al patio lateral derecho— sin ser totalmente errónea tampoco es totalmente cierta, pues no coincide ni con el texto de la disposición reglamentaria pertinente ni con 'los hechos específicos del caso. 
En términos de la variación solicitada es preciso señalar, por lo tanto, que las conclusiones de derecho a las que llega el Director Regional de la A.R.P.E. son insuficientes e incompletas.
La resolución de la J.A.C.L.
Tenemos que precisar ahora si la resolución emitida por la J.A.C.L., al autorizar la variación solicitada, se basó en los requisitos que establecen la ley y la reglamentación.
Las variaciones son uno de los instrumentos que se utilizan en el área de la zonificación para atemperar los reglamentos existentes a la realidad específica de una situación particular. Como indica el Sr. Santiago en su réplica a la solicitud de revisión, las variaciones pueden ser de dos tipos, las denominadas “variaciones en *900 uso” o las “variaciones en área”. Las primeras se refieren a aquellas mediante las cuales se solicita un uso distinto al autorizado reglamentariamente para el distrito de zonificación en cuestión. Las segundas — designadas también a menudo, en inglés, como bulk variances- autorizan cambios o variaciones a aquellos aspectos que tienen que ver con la volumetría del edificio: densidad poblacional, área de ocupación, altura del edificio, patios, entre otros. 
El referido Reglamento de Zonificación incluye las disposiciones sobre las variaciones en la Sec. 98.00. La Sub-sección 98.05 incluye los criterios a considerar para conceder variaciones en uso y la Sub-sección 98.06, los aplicables a las variaciones en área —“Otras variaciones” — . El resto de las subsecciones de la referida Sec. 98.00 aplican a los dos tipos de variaciones, incluyendo la Sub-sección 98.02 que dispone, sin distinguir entre los dos tipos de variaciones, que “el propósito de las variaciones será evitar que la aplicación literal de los requerimientos de este Reglamento resultare en una confiscación del disfrute de la propiedad”. 
En la literatura sobre el tema, se suele distinguir entre los requisitos para conceder una variación en uso — que generalmente requiere demostrar perjuicio innecesario (unnecesary hardship)— de aquellos para obtener una variación en área, en cuyo caso, sólo hay que demostrar las “dificultades prácticas” de construir sin la variación solicitada. Esa postura, sin embargo, no siempre es uniforme, pues en distintas jurisdicciones de Estados Unidos los tribunales han aplicado distintas combinaciones de los criterios (tests) que la jurisprudencia ha desarrollado para ambas situaciones. Véase, Daniel R. Mandelker, Land Use Law, 4ta ed., Charlottesville, Virginia, Lexis Law Publishing, 1997, págs. 249-263. La mayoría de los tribunales coinciden, sin embargo, en que la diferencia, entre el examen que debe efectuarse para evaluar la concesión de variaciones de uso y el que se realice para evaluar las de área, es una cuestión de grado. Coinciden, no obstante, en que, en el caso de las variaciones en área, el examen debe ser menos estricto. Id., a la pág. 257. Los tribunales suelen coincidir, además, en que cuando existen disposiciones específicas en la ley y en la reglamentación, son esas disposiciones específicas las que tanto la agencia, como los tribunales en su función revisora, deben examinar. 
En Puerto Rico, la situación es en cierto modo similar. El Tribunal Supremo no siempre ha distinguido claramente entre ambos tipos de variaciones. En A.R.P.E. v. J.A.C.L., 124 D.P.R. 858, 862-663 (1989), por ejemplo, el Tribunal Supremo, refiriéndose a una variación en uso y citando esencialmente la actual Sub-sección 98.05, señaló que las variaciones “no se favorecen y deben utilizarse selectivamente en aquellas circunstancias en que un propietario demuestre que las restricciones le causen un daño particular que no comparte con otros”. 
En Fuertes, Guillermety v. A.R.P.E., supra, el Tribunal Supremo consideró variaciones de otro tipo —las variaciones de área, denominadas como “otras variaciones” en la Sub-sección 98.06, supra — , relativas a la densidad poblacional permitida y al estacionamiento requerido. En dicho caso, el Tribunal Supremo, después de citar la subsección aplicable a “otras variaciones” en el Reglamento de Zonificación, afirma que en dicho reglamento, la A.R.P.E. “sabiamente limitó la concesión de variaciones a situaciones extraordinarias”, Id., a la pág. 978 (énfasis en el caso). A continuación, sin embargo, se cita literalmente de A.R.P.E. v. J.A.C.L., supra, para evidenciar la poca disposición del Tribunal en conceder variaciones, sin percatarse o, al menos sin señalarlo, que en este último, se trataba de variaciones en uso. Véase, A.R.P.E. v. J.A.C.L., supra, a las págs. 861 y ss.
En ese sentido, el Tribunal Supremo aparenta hacer dos cosas. Primero, distingue entre los dos tipos de variaciones, indicando que existen criterios reglamentarios particulares para cada uno de los tipos. Por otro lado, el Tribunal Supremo, en ambos casos, tanto en Fuertes, Guillermety, supra, en que se trata de variaciones *901 de área, como en A.R.P.E. v. J.A.C.L., supra, en que se trata de una variación en usoparece indicarnos que las variaciones no se favorecen, Fuertes, Guillermety, supra, que deben utilizarse selectivamente, Id., y que deben limitarse a situaciones extraordinarias. A.R.P.E. v. J.A.C.L., supra. Esa postura del Tribunal Supremo fue confirmada en Fuertes y otros, supra, en donde se reafirmó en la norma restrictiva en cuanto a la concesión de variaciones e indicó “solamente avalar variaciones concedidas por ARPE en situaciones realmente extraordinarias y meritorias ”. Fuertes y otros v. A.R.P.E., supra, a la pág. 11387. 
El Reglamento de Zonificación, sin embargo, es claro al proveer disposiciones distintas para las variaciones de uso y las de área. La Sub-sección 98.06 citada, establece, a fin de cuentas, los criterios a examinarse para conceder variaciones que no sean variaciones en uso. La Sub-sección 98,06 del Reglamento de zonificación dispone:

“98.06 - Otras Variaciones - La Junta o la Administración cada una en su ámbito jurisdiccional, podrá autorizar variaciones a los requisitos establecidos en este Reglamento para los usos que tolera el distrito, Se tomará en consideración, entre otros, los siguientes factores:

“1. La magnitud de la variación es la necesaria para asegurar la viabilidad del uso permitido y no es viable considerar otras alternativas para salvar el problema presentado.

2. La variación solicitada no afectará adversamente, entre otros, los siguientes factores:

a. La disponibilidad de la infraestructura

b. El contexto en el que ubica

c. El ambiente de la calle

d. La seguridad y tranquilidad de los vecinos

3. Se logra un desarrollo urbano más compacto.

4. La densidad o intensidad solicitada no lleva a convertir el distrito en otro.

5. La variación solicitada es cónsona con los propósitos de la disposición reglamentaria que se solicita sea modificada, así como con la política pública.

La celebración de vistas en estos casos será discrecional. ”

En el caso de autos, al examinar dichas disposiciones y el expediente del caso, encontramos que, de modo similar al caso de Fuertes, Guillermety, supra, en nuestro caso el Sr. Santiago no demostró “la ausencia de alternativas viables” para salvar el problema presentado, tal como lo exige el primer inciso de la citada Sub-sección 98.06. Fuertes, Guillermety v. A.R.P.E., supra, a la pág. 979. En el caso de autos, podía existir la alternativa de construir en el patio posterior del solar y el Sr. Santiago no demostró en su petición por qué dichas alternativas no eran viables. 
Por otro lado, en relación al argumento de la Sra. Cardona de que el Sr. Santiago tenía que haber probado el efecto confiscatorio exigido por la Sub-sección 98.02, como un paso previo a probar que se cumplía con los requisito de la Sub-sección 98.06, coincidimos con lo expresado en la vista oral por la abogada de la J.A.C.L. *902 Ella expresó que el efecto confiscatorio exigido por la Sub-sección 98.02, supra, quedaba plasmado, en el caso de las variaciones en uso, en los criterios expresados en la Sub-sección 98.05 y, en el caso de las variaciones en area, en los criterios incluidos en la Sub-sección 98.06. Es decir, el Sr. Santiago no tenía que demostrar antes el efecto confiscatorio para luego probar el cumplimiento con la 98.06, supra.
En cuanto al “comportamiento del sector”, el argumento del Sr. Santiago en el sentido de que la A.R.P.E. había concedido previamente aprobaciones similares a un número considerable de residencias en el sector, debemos señalar que dichas variaciones, aparentemente, se concedieron como parte del proceso inicial de consulta o durante la fase de urbanización del proyecto. Se trata, en realidad de las denominadas “casas-patio”, un tipo de desarrollo en que se elimina uno de los patios laterales y que está reglamentado en la See. 75 del Reglamento de Zonificación, supra. El Sr. Santiago no sometió evidencia de permisos otorgados por la A. R.P.E. concediendo variaciones en casos como el suyo, en que no se trataba de una casa patio y en el que se había solicitado la variación con posterioridad al proceso de autorizaciones de la urbanización como tal.
VII
En el caso de autos, lo que se cuestiona ante este foro es la validez de la resolución emitida por la J.A.C.L., resolución que revocó a la A.R.P.E. y concedió la variación que la A.R.P.E. había denegado. No le corresponde, por lo tanto, a este Tribunal decidir si procede la demolición de la estructura construida. De acuerdo al Reglamento de Procedimientos Adjudicativos de la A.R.P.E., lo que nos corresponde hacer en este momento, al revocar la determinación de la J.A.C.L. y al decidir que la determinación de la A.R.P.E. tampoco había examinado adecuadamente la situación desde el punto de vista técnico, es ordenar a A.R.P.E. que reconsidere, en su dimensión técnica, la solicitud original, en aquellos aspectos en que la reglamentación autorice la construcción efectuada, y que refiera a la división legal de dicha agencia, para la acción correspondiente ante los tribunales, los aspectos del proyecto que no estarían autorizados ministerialmente. Son los tribunales los que están facultados para ordenar, mediante el procedimiento sumario que provee la Ley Orgánica de la A.R.P.E., la demolición de la estructura. En realidad, entendemos que el Sr. Santiago podría solicitar a dicha agencia y a la junta de diseño de la urbanización, el permiso de construcción para la construcción efectuada a nivel del primer piso. 
VIII
Con estos antecedentes, se expide el auto, se revoca la resolución recurrida y se devuelve el caso a la A.R. P.E. para que dicha agencia revalúe, desde el punto de vista técnico, la construcción efectuada por el Sr. Santiago, otorgando el correspondiente permiso para la construcción del primer nivel que esté conforme al Reglamento de Zonificación, y refiera la violación existente a nivel de segunda planta a la división legal de dicha agencia, para la acción correspondiente.
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2000 DTA 46
1. El distrito R-l es un distrito de baja densidad poblacional con solar mínimo de novecientos (900) metros cuadrados, cuyo propósito es, entre otros, clasificar terrenos “para facilitar, según se justifique, las necesidades de crecimiento urbano”. El distrito R-3 es un distrito residencial general, con densidad poblacional intermedia y solar mínimo de trescientos (300) metros cuadrados, que se establece con el propósito de clasificar áreas residenciales desarrolladas o que puedan desarrollarse. Véanse, págs. 57, 63 y 67 del Reglamento de Zonificación, Reglamento de Planificación Núm. 4 (Vigencia del 16 de septiembre de 1992.)
*903 2.Constan en nuestro poder, además de nuestro expediente en el recurso que nos ocupa, copia de los expedientes de: (1) la apelación ante la J.A.C.L. (96-111-ac); (2) la solicitud de anteproyecto ante la A.R.P.E. (96-14-A-484-BPA); (3) la querella de la Sra. Cardona (95-14-G-578-BPQ) y (4) la del Sr. Cajigas (96-13-A-5031-BPQ).
3. Aunque las partes no nos explican claramente estos datos, los mismos pueden deducirse de la Escritura de Restricciones incluida en las págs. 22-36 del Apéndice de la Solicitud de revisión. Las restricciones también se mencionan en una hoja de presentación de casos utilizada por el personal técnico de la A.R.P.E., con fecha del 26 de febrero de 1996, qüe forma parte del expediente de dicha agencia en el caso del anteproyecto, 96-14-A-484-BPA. En dicho expediente hay, de hecho, copia de las alegadas restricciones.
Hemos tomado además conocimiento judicial de un mapa de carreteras comercial, para complementar la escasa información suministrada por las partes en relación a las tres urbanizaciones.
Entre las restricciones de uso y edificación incluidas en el expediente, citamos, en lo pertinente:

“UNO: (1) Usos y Estructuras:... Para que pueda realizarse alguna ampliación a las unidades residenciales, será necesario que la misma cumpla con todos los requisitos dispuestos por los Reglamentos de Zonificación aprobados por la Junta de Planificación, que guarde armonía con la arquitectura, material y color de la vivienda y además, deberá contar con el endoso y aprobación del- Comité de Control Arquitectónico para la Urbanización La Mansión - Sección Mansión del Río. []...

DOS: (2) Alteraciones y Ampliaciones: Hasta tanto la Junta de Planificación apruebe los correspondientes planos y especificaciones debidamente certificados por un ingeniero o arquitecto con licencia, en ningún solar podrá construirse estructura alguna ni tampoco podrá realizarse alteración o ampliación al exterior de las viviendas o garajes de un color distinto al originalmente usado. (Véanse, págs. 25-27 del Apéndice de la Solicitud de revisión. ”

4. De hecho, aunque en todo momento la A.R.P.E. considera que el patio delantero es el localizado al norte del solar (véase la pág. 58 del Apéndice de la Réplica a la solicitud de revisión), técnicamente el patio delantero sería el que se considera el patio lateral izquierdo, pues es el que daría de frente a la vía.
5. Esa fue la altura que se indicó, a preguntas de este foro, en la vista oral celebrada en el recurso ante nos y la misma parece correcta a juzgar por las fotografías que obran en autos.
6. El 3 de enero de 1996, funcionarios de la A.R.P.E. completaron un formulario de solicitud de investigación de querella, tras haber recibido una comunicación del Sr. Cajigas, sin fecha, en la que éste se quejaba de la construcción de la estructura de dos plantas en la misma colindancia y de la ubicación de ciertas ventanas en la parte trasera de la ampliación, restándole intimidad al patio trasero del Sr. Cajigas. Véase el expediente de la A.R.P.E. en el caso 96-13A-031-BPQ.
7. El citado Reglamento de Procedimientos Adjudicativos de la A.R.P.E. reconoce en la subsección 14.02 la facultad de la J.A.C.L. de revisar en apelación ciertas denegaciones efectuadas por la agencia.
8. Lo que se incluyó, tanto en la solicitud de anteproyecto ante la A.R.P.E. como en la apelación ante la J.A.C.L., fue una copia de una hipoteca que pesa sobre la propiedad, en la que no hemos encontrado ninguna alusión a las alegadas restricciones. Dicha hipoteca, de hecho, fue otorgada en 1993, cuando la propiedad supuestamente se adquirió en 1986, según se indica en el memorial explicativo del anteproyecto. Véase pág. 4 del Apéndice de la Réplica a la solicitud de revisión.
9. En Asoc., C. D. Octubre v. J.A.C.L., supra, el Tribunal Supremo determinó que, cuando se adquirió la propiedad para la cual se solicitó la variación, con el fin de establecer un dispensario médico, se tenía “pleno conocimiento de las limitaciones de uso”. En A.R.P.E. v. J.A.C.L., supra, se había adquirido una propiedad residencial en los alrededores del Cond. El Centro con el propósito de convertirlo en un uso comercial. En Fuertes, Guillermety v. A.R.P.E., supra, se había adquirido un edificio de apartamentos existente, de menor densidad, y se intentó obténer una variación para remodelarlo ert un mayor número de apartamentos sin que hubiera el espacio de estacionamiento necesario. En Fuertes y otros v. A.R.P.E,, *904 supra, se adquirió una propiedad en Miramar con el propósito de establecer un “colmado vecinal” que opera las veinticuatro horas del día, sabiendo de las limitaciones reglamentarias del solar.
10. De hecho, entendemos que, de aplicar la doctrina de autoinflicción del daño en todos los casos en que la zonificación prohibe determinada construcción, no se podría solicitar prácticamente ninguna variación. Existen no obstante varios casos en la jurisprudencia norteamericana en que los tribunales han entendido lo contrario. Véase, Kenneth H. Young, Anderson's American Law of Zoning, 4ta ed., New York, Clarck Boardman, Callaghan, 1996, Vol. III, págs. 618-620.
11. Aunque, como indicamos anteriormente, las restricciones también se mencionan en una hoja de presentación de casos utilizada por el personal técnico de la A.R.P.E., con fecha del 26 de febrero de 1996 (Véase el expediente de dicha agencia en el caso 96-14-A-484-BPA), aparentemente no se incluyó dicho argumento en los escritos presentados en el proceso administrativo.
12. De hecho, en Asoc. Res. Baldrich, Inc. v. J.P. de P.R., supra, el Tribunal Supremo indicó que no tenía que discutir el valor que tenían ante A.R.P.E. o ante la Junta las servidumbres en equidad y el deber de estas agencias cuando se planteen las mismas ante su consideración.
13. “,..[L]a citada disposición confiere expresamente a los ciudadanos particulares -independientemente de la acción que pueda promover o no el Estado- a solicitar y obtener, si la situación lo justifica, una sentencia de injunction.'' Torres v. Rodríguez, 101 D.P.R. 177, 183 (1973), refiriéndose a la disposición legislativa precedente. Dicho recurso de interdicto puede ser para, “entre otras cosas, ‘remover’, y ‘demoler’ cualquier edificio construido". A.R.P.E. v. Rodríguez, 127 D.P.R. 793 (1991), a la pág. 808.
14. En el caso de autos existe, de hecho, un memorando interno, con fecha del 6 de marzo de 1996, en el que se da instrucciones de archivar el caso, pendiente la resolución del anteproyecto. Véase el expediente de la A.R.P.E. en el caso 96-13-A-031-BPQ.
15. Es preciso señalar qué dicho punto fue señalado por el Sr. Santiago tanto en la solicitud de anteproyecto como en la reconsideración presentadas ante la A.R.P.E.
16. El Reglamento de Zonificación dispone que en un distrito R-3 los dos patios deben sumar .cinco metros, y ninguno de ellos podrá ser menor de dos metros. En el caso específico ante nos, el patio lateral izquierdo, como dijimos, mide 2.01 metros. Técnicamente, por lo tanto, el patio lateral derecho debe medir por lo menos 2.99 metros.
17. En inglés se utiliza el término fine-tuning para referirse a la adaptación a los casos particulares que permiten hacer instrumentos tales como los usos no conformes legales, las excepciones, las variaciones y otros. Véase, James E. Brookshire, “The Delicate Art of Balance-Ruminations on Change and Expectancy in Local Land Use”, en Christine A. Carpenter, 1998 Zoning and Planning Law Handbook, [St. Paul, MN], West Group, 1998, Sec. 11.05, a la pág. 39.
18. Para una definición de dichos términos, véase la Sec. 2.00, Definiciones, págs. 3-26 del Reglamento de Zonificación.
19. Dicho reglamento define la variación en la Sec. 2.00. a la pág. [25], como “[ajutorización para utilizar una propiedad para un uso prohibido por las restricciones impuestas a una zona o distrito y que sólo se concede para evitar perjuicios a una propiedad que, debido a circunstancias extraordinarias, la aplicación estricta de la reglamentación equivaldría a una confiscación de la propiedad”.
20. Coincidimos, sobre el particular, con lo expresado por la representación legal de la J.A.C.L. en la vista oral que celebramos, en el sentido de que las particularidades de en qué consiste el efecto confiscatorio en los dos tipos de variaciones se expresa en los criterios de las Subsecciones 98.05 y 98.06 citadas.
La otra excepción sería la primera oración de la Sub-sección 98.04, que dispone que se requerirán vistas públicas en el caso de las variaciones en uso. El resto de la Sub-sección 98.04, a nuestro entender, aplica a toda vista celebrada para considerar variaciones.
*905 21. Véase, Kenneth H. Young, Anderson's American Law of Zoning, 4ta ed., New York, Clarck Boardman, Callaghan, Supl. 1997, Vol. III, págs. 45-47.
22. La Sub-sección 98.05 incluye dos incisos, los número cinco (5) y seis (6), que antes no estaban incluidos en el texto.
23. La actual Sub-sección 98.06 del Reglamento de Zonificación, supra.
24. En Asoc. Res. Park Side, Inc. v. J.P., 139 D.P.R. _ (1995), 95 J.T.S. 149, a las págs. 242-243, el Tribunal Supremo, sin embargo, distinguió entre las variaciones de uso y las de área, al examinar el requisito de vistas públicas.
25. El patio posterior tenía una dimensión de diez punto ochenta y cinco metros (10.85 m.), según el plano del solar del Sr. Santiago incluido en la pág. 58 del Apéndice de la Réplica a la solicitud de revisión.
26. Al resolver este recurso, no estamos pasando juicio sobre la procedencia de cualquier otra acción civil que pudiera tener la recurrente, en particular por el estorbo que pudiese representar la pared de 18 pies de la nueva construcción aquí en controversia. Véase, por ejemplo, el Art. 277 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2761.