GARAGE RUBÉN, INC., peticionaria, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. HECTOR A. COLÓN CRUZ, JUEZ, demandado.

Número: O-72-213　　Resuelto: 27 de febrero de 1973

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

*Luis Muñoz Rivera,* abogado de la peticionaria; *Tadeo Negrón Medero,* abogado de la Administración de Servicios al Consumidor.

EL JUEZ ASOCIADO SEÑOR MARTÍNEZ MUÑOZ emitió la opinión del Tribunal.

La Administración de Servicios al Consumidor fue creada como sucesora de la antigua Administración de Estabilización Económica por la Ley Núm. 148 de 27 de junio de 1968, 23 L.P.R.A. sec. 1001 *et seq.* con el propósito primordial de proteger, representar, asesorar, educar y orientar al público consumidor. La Exposición de Motivos de la ley refleja la honda preocupación de sus autores en corregir o aliviar los serios problemas que afectan al grupo consumidor los cuales, aunque muchos y complejos, pasaban con frecuencia inadvertidos por no contarse con un organismo efectivo que velara por sus intereses peculiares como grupo quedando el consumidor puertorriqueño en un estado de indefensión. El desvalido estado en que se encontraba el consumidor exigía una solución práctica en términos de protección, educación y de mantenerle informado y protegido contra las prácticas indeseables y, en no pocas ocasiones, inescrupulosas que algunos comerciantes y manufactureros llevan a cabo. Como ejemplo de estas prácticas la Exposición de Motivos señala, entre otras, los anuncios engañosos, los falsos descuentos en precios, la rotulación defectuosa, garantías que no se cumplen, servicios que no se prestan y los aumentos injustificados en los precios.

Como parte de las funciones y amplios poderes que se le confirió, el Administrador fue facultado a atender e investigar las querellas presentadas por los consumidores y tomar la acción correctiva que procediese en derecho.

La controversia en este recurso fue planteada inicialmente mediante querella presentada ante la Administración por un consumidor. El querellante es dueño de un automóvil. Residía en Cataño. En noviembre de 1970 se le dañó la transmisión automática del automóvil. Llamó por teléfono al Garage Rubén en Hato Rey para la reparación. El Garage Rubén tenía un anuncio en las páginas amarillas de la guía telefónica metropolitana que en su texto expresa lo siguiente: ([1])

"GARAGE RUBÉN Puerto Rico's First and Largest Automatic Transmission Plant, TRANSMISIONES AUTOMÁTICAS EXCLUSIVAMENTE, Unico Probador de Transmisiones Automáticas en Centro y Sur América, Facilidades de Financiamiento, Venta de Piezas y Transmisiones Automáticas para todas las marcas y modelos, Transmission Exchange Service, Hato Rey. Guayama 229, Cuadro 767-6266, Ponce—Ponce By-pass detrás Villa Grillasca, Tel. 842-5343."

Según declaró el Sr. Francisco García Rodríguez en vista celebrada ante la Administración de Servicios al Consumidor, él se comunicó—primero por teléfono y luego personalmente—con el Garage Rubén, mediante su Representante de Ventas Sr. Ortiz, para que le reparasen su transmisión y le brindaran financiamiento para pagar dicha reparación. De sus comunicaciones con el Sr. Ortiz, el Sr. García Rodríguez obtuvo la impresión de que el financiamiento le sería brindado por la propia empresa Garage Rubén. El Sr. García Rodríguez acordó que se le efectuara la reparación y el precio de la misma, dejando su carro en los talleres de la peticionaria. Cuando se le informó que estaba hecha la reparación, preguntó él sobre los papeles que debía llenar para el financiamiento y lo refirieron a la compañía Beneficial Finance. Acudió el Sr. García a la Beneficial Finance, donde le dijeron que tenía que dar cierta información de crédito, que tenía que conseguir un fiador, que

---

([1]) La recurrente Garage Rubén, Inc. alega que se trata de las guías correspondientes a los años 1968–69 y 1969–70, pero este detalle no fue objeto de evidencia por ninguna de las partes.

tendría que pagar cierta cantidad de intereses y que la transacción consistía en que la Beneficial Finance le haría un préstamo personal al Sr. García para pagar la reparación. (Récord de la vista, págs. 2–7.)

Tanto el Sr. Ortiz, representante de ventas del Garage Rubén, como el Sr. Cintrón, contralor de la misma empresa, confirmaron en sus testimonios ante la Administración de Servicios al Consumidor que el financiamiento que ofrecía la empresa se hacía a través de la Beneficial Finance. (Récord de la vista, págs. 7–8.)

Declaró el Sr. García Rodríguez que debido a su inconformidad con el sistema de financiamiento (según quería efectuarlo el Garage Rubén) y los términos específicos del mismo, rehusó someterse a dicho financiamiento. Aparentemente el Garage Rubén le retuvo su automóvil en garantía de su crédito. [2]

Todo ello motivó que el Sr. García Rodríguez radicara ante la Administración de Servicios al Consumidor una querella por anuncio engañoso contra Garage Rubén, Inc. en base al Art. 14 de la Ley Núm. 148 de 27 de junio de 1968, (23 L.P.R.A. sec. 1014) y al Art. 9 del Reglamento para Prohibir los Anuncios y las Prácticas Engañosas en el Comercio. (23 R.&R.P.R. sec. 1005–64.)

Se celebró vista ante el Oficial de Audiencias de la Administración el día 10 de marzo de 1971. Testificaron el Sr. García Rodríguez y los Sres. Ortiz y Cintrón, estos últimos presentados por la querellada Garage Rubén, Inc. Con base al récord, el Director de la Administración dictó una resolución declarando con lugar la querella y en su consecuencia (a) multando a Garage Rubén, Inc., en $500 por su violación a la Ley 148 y su Reglamento, antes citados, y (b) ordenando a

---

[2] Esto no surge de la transcripción de la vista ante la Administración de Servicios al Consumidor, aunque en la Resolución de dicha administración se expone como un hecho. (Pág. 2.) El recurrente no cuestiona esta afirmación.

la querellada que le conceda al querellante las facilidades de financiamiento ofrecidas y que el querellante pueda cumplir. Solicitada la reconsideración por la Administración, fue declarada sin lugar.

La querellada pidió revisión de dicha resolución al Tribunal Superior, Sala de San Juan. A base del expediente y las alegaciones de las partes, el tribunal sostuvo que la prueba desfilada ante la Administración de Servicios al Consumidor sostiene ampliamente su decisión de que la querellada infringió el Art. 14 de la Ley 148 y el Art. 9 del Reglamento sobre anuncios y prácticas engañosas. Por ello confirmó la imposición de multa a la querellada. Sin embargo, por considerar que la orden de la Administración exigiéndole a la querellada que concediese al querellante el financiamiento ofrecido no está dentro de las facultades del Administrador, el tribunal modificó la resolución eliminando ese remedio. ([3])

Recurre la querellada ante nos mediante *certiorari* para revisar la resolución del Tribunal Superior. Señala como errores:

(1) que el tribunal sostuvo la aplicación del Reglamento sobre anuncios y prácticas engañosas al anuncio en cuestión, a pesar de que el anuncio fue publicado en las guías correspondientes a los años 1968-69 y 1969-70, habiendo sido enviado para su publicación con anterioridad a la fecha de efectividad del Reglamento;

(2) que a pesar de que el tribunal reconoce que el Administrador actuó sin jurisdicción al ordenar que la querellada concediera facilidades de financiamiento, se contradice al confirmar la multa impuesta por la Administración a la querellada;

(3) que el tribunal confirmara la determinación de la Administración en el sentido de que el anuncio en cuestión era engañoso;

(4) que el tribunal no dilucida el conflicto entre los testimonios de los agentes de la querellada y el testimonio del querellante, lo que viola el debido proceso de ley.

---

([3]) Por su parte, ni el querellante ni la Administración de Servicios al Consumidor recurren para cuestionar aquella parte de la resolución del tribunal que eliminó uno de los remedios impuesto por la Administración.

El primero, segundo y cuarto señalamiento de error son inmeritorios y no merecen mayor discusión.

En el primero, la recurrente apunta que el Reglamento en cuestión es inaplicable al anuncio que hizo la querellada en la guía telefónica. Alega que dicho anuncio antecede la fecha de efectividad del Reglamento, especialmente si se toma en cuenta que debido a las exigencias de publicación, el anuncio tuvo que someterse a la Compañía Telefónica con varios meses de anticipación. Este señalamiento es improcedente por lo siguiente: (a) la recurrente no parece haber levantado este punto ante la Administración y correspondía a dicha Administración resolverlo en primera instancia, con la prueba correspondiente sobre las fechas de los anuncios y demás datos necesarios; (b) la recurrente no demostró que después de la efectividad del Reglamento ella o sus agentes hiciesen gestión alguna para eliminar, corregir o aclarar el anuncio con la misma publicidad que tuvo éste; ni siquiera trataron de advertirle al Sr. García Rodríguez cualquier cualificación al anuncio antes de emprenderse el trabajo en la transmisión de su auto. Además, a la fecha en que, según alega la recurrente, se preparó y publicó el anuncio ya estaba en vigor la Ley Núm. 148, la cual ya antes de redactarse el Reglamento prohibía los anuncios engañosos, 23 L.P.R.A. sec. 1014.

El segundo error señalado, en el sentido de que el tribunal recurrido se contradijo al confirmar la imposición de multa y a la vez denegar el otro remedio, es claramente frívolo. Ambas situaciones son independientes; una de ellas tiene el concepto de penalidad para proteger el interés público y la otra es un remedio para proteger un interés individual del querellante. La validez de una no depende de la validez de la otra. No es preciso determinar si fue correcta la determinación del tribunal recurrido de negar uno de los remedios decretados por la Administración, puesto que no ha sido atacada esa determinación por las partes. Basta con señalar que la imposición de

una multa como la presente está autorizada por ley. Véase 23 L.P.R.A. sec. 1005 (d) en conjunto con 23 L.P.R.A. sec. 1014. (4)

■ También es frívolo el cuarto señalamiento de que el tribunal recurrido violó el debido procedimiento de ley al no dilucidar el conflicto de testimonios del querellante y los agentes de la querellada. La Administración, por conducto de su Oficial de Audiencias, escuchó los testimonios y estaba en la mejor posición para evaluar la veracidad de los testigos y dirimir cualquier conflicto que surgiese. Al dar lugar a la querella, implícitamente resolvió cualquier conflicto importante en la prueba a favor del querellante. Cuando el Tribunal Superior confirmó la resolución y concluyó que la evidencia desfilada ante la Administración sostiene ampliamente la decisión de ésta, estaba haciendo suya la apreciación de la prueba testifical que hizo la Administración, probablemente en deferencia a la mejor posición de ésta para observar los testigos y para evaluar situaciones que caen dentro de su especialidad. Véase *López v. Junta de Planificación*, 80 D.P.R. 646, 673 (1958). Pero más importante aun es el hecho de que hubo muy poco conflicto entre los testimonios, y las discrepancias no involucraban los hechos fundamentales en este recurso: el texto del anuncio en cuanto al financiamiento y la práctica de la querellada en cuanto a dicho financiamiento.

Finalmente, la recurrente muestra su inconformidad con la determinación del Tribunal Superior confirmando la resolución de la Administración en el sentido de que el anuncio en cuestión era uno engañoso en violación de la Ley Núm. 148 y del Reglamento hecho bajo la autoridad de dicha ley. Este planteamiento merece particular consideración.

---

(4) El Art. 5(d) de la Ley, 23 L.P.R.A. sec. 1005, le da poder a la Administración, previa notificación y vista, para ". . . imponer multas administrativas por las violaciones a las reglas, reglamentos y órdenes aprobadas o dictadas por la Administración. . . ." no menores de $25.00 ni mayores de $1,000.00.

La Exposición de Motivos de la Ley Núm. 148 menciona, como uno de los principales problemas que sufre el consumidor puertorriqueño y que motivan la creación por la Asamblea Legislativa de la Administración de Servicios al Consumidor, el de los anuncios y prácticas engañosas. El Art. 14 de la Ley, 23 L.P.R.A. sec. 1014 dispone lo siguiente:

"Se prohíbe todo tipo o clase de acto, práctica, anuncio o publicidad que constituya o tienda a constituir fraude o engaño, en donde el artículo, producto o servicio sea falsamente representado o que cree en el consumidor una imagen o impresión errónea sobre la marca, precio, cantidad, tamaño, calidad, cualidad, salubridad o cualquier otra característica del producto, artículo o servicio."

La facultad de la Administración para adoptar reglamentos e imponer multas administrativas por violaciones nace de la ley. Art. 5, 23 L.P.R.A. sec. 1005. El 2 de junio de 1970 el Director de la Administración aprobó el "Reglamento para Prohibir los Anuncios y las Prácticas Engañosas en el Comercio". Entró en vigo treinta días después. 23 R.&R.P.R. sec. 1005-51 *et seq.* Dispone el Reglamento en su Sec. 1005-64:

"Todo anuncio deberá estar redactado, expresado y presentado en tal forma que lleve a la mente del consumidor toda aquella información que le sea esencial y necesaria conocer sobre las cualidades, calidad, precio, tamaño, cantidad, utilización o cualquier otra característica del artículo, producto o servicio que se anuncia, libre de toda ambigüedad que pueda tender a confundirlo."

En la esfera federal bajo el Federal Trade Commission Act, 15 U.S.C.A. 41 *et seq.*, un estatuto similar que prohíbe las prácticas engañosas en el comercio, en general se ha resuelto que un anuncio no tiene que ser falso, literalmente hablando, para violar la citada ley federal, *National Bakers Services, Inc.* v. *F.T.C.*, 329 F.2d 365 (7th Cir. 1964) y casos allí citados. Si un anuncio es o no engañoso, ha de determinarse a base de la impresión que tiende a crear en el público,

debiéndose examinar no sólo el significado de las palabras usadas, sino también lo que razonablemente se implicó, *Spiegel, Inc.* v. *F.T.C.*, 411 F.2d 481 (7th Cir. 1969); *Niresk Industries, Inc.* v. *F.T.C.*, 278 F.2d 337 (7th Cir. 1960), *cert. den.* 364 U.S. 883. Y cuando se habla de la impresión creada en el público, no debe mirarse al consumidor más sofisticado, sino al menos sofisticado. *Exposition Press, Inc.* v. *F.T.C.*, 295 F.2d 869 (2nd Cir. 1961), *cert. den.* 370 U.S. 917. Las afirmaciones en un anuncio que se prestan a dos interpretaciones distintas, una de las cuales es engañosa, se interpretarán en forma adversa al anunciante, *Country Tweeds, Inc.* v. *F.T.C.*, 326 F.2d 144 (2nd Cir. 1964).

■ No es preciso que la Federal Trade Commission demuestre intención de defraudar o engañar para concluir que se ha incurrido en una violación de la ley en cuestión. *Regina Corp.* v. *F.T.C.*, 322 F.2d 765 (3rd Cir. 1963), ni que demuestre que el anuncio o práctica en efecto engañó a alguien, *Montgomery Ward & Co.* v. *F.T.C.*, 379 F.2d 666 (7th Cir. 1967). Tampoco puede levantarse como defensa el que la práctica atacada sea seguida generalmente por los demás miembros de la industria de que se trate, *Times-Picayune Publishing Co.* v. *United States*, 345 U.S. 594 (1953).

■ Más específicamente, se ha resuelto que un vendedor que hace representaciones falsas en cuanto a los términos de venta, financiamiento, servicios y garantías de televisores nuevos y usados violó la ley federal en cuestión, *World-Wide Television Corp.* v. *F.T.C.*, 352 F.2d 303 (3rd Cir. 1965), *cert. den.* 384 U.S. 928. Para una colección de casos referentes a distintas situaciones de hecho, véanse 55 Am. Jur. 2d, *Monopolies, Restraints of Trade and Unfair Trade Practices*, secs. 740–777 y 65 A.L.R.2d 225, Anotación sobre el tema *What constitutes false, misleading, or deceptive advertising or promotional practices subject to action by Federal Trade Commission.*

El Reglamento, en su Sec. 1005–53 (d) define el término "Anuncio Engañoso" así:

"(d) 'Anuncio Engañoso' significará todo tipo o clase de anuncio, o publicidad verbal o escrita, difundido mediante la prensa, radio, televisión, cine, revistas, hojas sueltas o cualquier otro medio de comunicación, que constituya o tienda a constituir fraude o engaño, en donde el artículo, producto o servicio que se anuncie sea falsamente representado o que cree en el consumidor una imagen o impresión errónea sobre la marca, precio, cantidad, tamaño, utilización, calidad, cualidad, salubridad, contenido, valor nutritivo o cualquier otra característica del producto, artículo o servicio."

En vista de esas normas, incluso las de la esfera federal consideradas como persuasivas por lo elaborada que está la doctrina en dicha jurisdicción, nos corresponde ahora determinar si el anuncio hecho por la recurrente es de los prohibidos por la Ley Núm. 148 por ser engañoso.

La recurrente parece partir de la premisa que el querellante no fue engañado ni confundido por el anuncio y que de acuerdo con su propio testimonio a él se le ofrecieron facilidades de financiamiento a través de una compañía financiera. Ello no tiene la importancia que le atribuye la recurrente. Si bien fue el querellante quien llamó la atención a la Administración sobre la práctica de la querellada que él consideraba engañosa y declaró en la vista para demostrar cómo se desarrolló en su caso dicha práctica, la Ley Núm. 148 no exige expresamente que se demuestre que la práctica haya engañado a alguien para que pueda calificarse de engañosa. No se trata aquí de un pleito meramente privado. Uno de los propósitos de la Ley Núm. 148 es el de proteger al público consumidor. El interés público hacia ese fin existe sin que la práctica alegadamente engañosa o indeseable viole algún derecho privado del querellante. En la esfera federal, la jurisprudencia ha resuelto también que no es preciso probar que algún consumidor fuera engañado, sino que basta con la tendencia a engañar. Nótese

que el Art. 14 de la Ley Núm. 148, citado supra, prohíbe todo anuncio ". . . que constituya o *tienda a constituir* fraude o engaño, en donde el artículo, producto o servicio *sea falsamente representado* o que cree en el consumidor una imagen o representación errónea. . . ." (Énfasis nuestro.) De modo que, una vez que el tribunal recurrido eliminó el remedio que se concedía a favor del querellante, la determinación de si el anuncio lo engañó a él personalmente no es decisiva en cuanto al problema de si el anuncio es o no engañoso.

■ Examinado el texto del anuncio en cuestión, vemos que el principal producto o servicio que se ofrece es la venta y reparación de transmisiones y de piezas de las mismas. El detalle que nos interesa—las "facilidades de financiamiento" —es un servicio subsidiario al negocio principal. Sobre este particular debemos notar que tanto el Art. 14 de la Ley Núm. 148 como el Art. 9 del Reglamento correspondiente hablan, no sólo de la cantidad, calidad, etc., del producto o servicio, sino también de "cualquier otra característica" del mismo, frase que razonablemente interpretada comprende los términos de financiamiento, que constituyen un factor importante en la decisión que hacen muchos consumidores de adquirir el producto o servicio. En la esfera federal, ya hemos visto que hay casos en que se ha considerado anuncio engañoso el que falseaba los términos de financiamiento en la venta de artículos de consumo, *World-Wide Television Corp.* v. *F.T.C.*, supra.

Si la recurrente anunciaba "facilidades de financiamiento", es obvio que tenía que brindar ese servicio o, de lo contrario, el anuncio sería en ese respecto abiertamente falso. La posición de la querellada consiste en alegar que brindaba el servicio en la forma en que lo hizo en este caso, es decir, indicando a los clientes que solicitaban financiamiento que acudieran a las oficinas de otra compañía, la Beneficial Finance, cuyo negocio es precisamente el de hacer préstamos personales al público en general. Una vez el cliente acudía a

las oficinas de la financiera, se le tramitaba su financiamiento de la misma forma en que se hacía con el público en general, o sea, se le pedían datos personales, referencias, fiadores, etc. Es evidente que la recurrente dejaba todo el asunto del financiamiento a cargo de la Beneficial Finance y rehusaba encargarse de ningún trámite del financiamiento, hasta el punto que alegó en la vista de la querella y en los procedimientos posteriores que cualquier insatisfacción que tuviese el querellante con los términos del financiamiento debía resolverse mediante una reclamación contra la compañía financiera y no contra la recurrente.

■ Somos de opinión que el anuncio en cuestión es engañoso. La recurrente expresó en su anuncio que ofrece "facilidades de financiamiento". Ello tiende a crear una imagen o impresión errónea en el consumidor de que la querellada ofrece una ventaja sobre otras empresas que no tienen "facilidades de financiamiento". Desde el punto de vista del consumidor más racional, la frase aludida tiende a atraer clientes que buscan la empresa que más ventajas les ofrezca. A cambio de esa mayor clientela, la recurrente lo que hace es decirle al cliente que vaya a pedir un préstamo a una compañía financiera, como podría decirle que fuese a tal o cual banco. Ese "servicio" lo puede hacer cualquier empresa sin invertir recursos de tiempo o personal alguno y, lo que es peor, sin ayudar o beneficiar al cliente en forma alguna.

■ Como hemos visto, de acuerdo con la doctrina federal y aún con una interpretación razonable de la ley en Puerto Rico, resulta innecesario entrar o considerar si el anuncio es "falso" o no; lo importante es determinar si el texto del anuncio y las implicaciones que tiene para el público en general, especialmente poco sofisticados, no coinciden con la realidad del producto o servicio que se brinda. La intención de engañar o confundir al público, si bien puede inferirse del acto engañoso en muchos casos, tampoco hay que probarla para que exista una violación. Y la querellada no

puede, como pretende, defenderse a base de que otras empresas sigan esa práctica. El admitir dicha defensa equivaldría a decir que si todos o muchos engañan, cada uno adquiere autorización para engañar. No estamos diciendo que la querellada tenga que brindar financiamiento a sus clientes ni que sea ilegal de por sí la práctica de referirlos a una compañía financiera. Sólo resolvemos que el llamarle a esto último "facilidades de financiamiento" en un anuncio constituye una práctica prohibida por ley.

*Se confirmará la resolución del Tribunal Superior, Sala de San Juan, objeto del presente recurso.*

El Juez Presidente, Señor Pérez Pimentel, no intervino.