*684 TEXTO COMPLETO DE LA SENTENCIA
La parte demandante en el caso de epígrafe, David Abril Vélez (Abril) acude ante nosotros mediante Recurso de Apelación y nos solicita que revoquemos la Resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 25 de agosto de 1998, cuya copia de la notificación fue archivada en autos el 6 de octubre de ese mismo año.
Por los fundamentos que expondremos, CONFIRMAMOS la determinación del tribunal de instancia.
I
Carmen O. González Collazo (González) y Abril contrajeron matrimonio el 19 de junio de 1982. Durante el matrimonio procrearon dos hijos, Susan Maileen y David, ambos menores de edad en la actualidad.
El 9 de enero de 1997, Abril presentó demanda de divorcio contra González por la causal de separación. Este ofreció la cantidad de $180.00 mensuales por concepto de pensión alimentaria para los dos hijos menores, más la mitad de sus gastos escolares. González, por su parte, presentó la contestación a la demanda el 31 de enero de 1997 y solicitó una pensión pendente lite de $250.00. El 24 de febrero de 1997, las partes comparecieron a una vista para fijar la pensión alimentaria en la que quedó determinado que Abril pagaría una pensión provisional de $180.00 mensuales. El 29 de agosto de 1997, González presentó la contestación a la demanda enmendada y alegó que la pensión alimentaria que pretendía pagar Abril no satisfacía las necesidades de sus hijos ni era proporcional a los ingresos de éste.
La vista para fijar la pensión alimentaria fue celebrada el 4 de marzo de 1998 ante la Oficial Examinadora Marta Torres López (Oficial Examinadora). En dicha vista las partes desfilaron prueba sobre sus ingresos y gastos. Específicamente, Abril alegó que operó un negocio propio de refrigeración de nombre Thermo Tecnical hásta diciembre de 1997, a través del cual proveía servicios de reparación de acondicionadores de aire comerciales e industriales. Según Abril, la necesidad de generar más ingresos lo obligó a cerrar este negocio y obtener un empleo como técnico de refrigeración en la compañía J. V. Air. Abril añadió que en este nuevo empleo devenga un salario mensual de $1,083.33.
Posteriormente, el 1 de julio de 1998, la Oficial Examinadora rindió el informe correspondiente a raíz de la celebración de la vista del 4 de marzo de ese año. En dicho informe, ésta indicó que los estados de cuenta bancaria de Abril (Multicuenta Popular, número 221-099549) reflejaron un balance promedio mensual de $5,908.46, en los meses de septiembre a diciembre de 1997. La Oficial Examinadora, luego de ponderar la totalidad de la prueba y la credibilidad de los testigos, le imputó a Abril un ingreso mínimo neto de $2,000.00 mensuales. A base de dicho ingreso, a Abril le fue asignada una pensión alimentaria de $743.32 mensuales. Sobre las alegaciones de Abril con respecto al cierre de su negocio y su nuevo empleo como técnico de refrigeración, la Oficial Examinadora manifestó lo siguiente:

"Nos provoca serias dudas que el señor Abril expresara que cerró su negocio porque necesitaba más dinero para irse a trabajar como empleado de otra persona, que resulta ser un amigo suyo, según su propia declaración, por un salario de $250.00 semanales sobre los cuales no aportó prueba documental. Tampoco hubo prueba a los fines de que, efectivamente, este negocio cerró.

... No nos convence su testimonio por lo que le imputamos, a base de lo ya expresado, un ingreso mínimo neto de $2,000.00 mensuales. El señor Abril radicó la demanda en enero de 1997 cuando aún tenía el negocio y ya para la vista de alimentos 'supuestamente' ya no lo operaba," (Enfasis en el original).
El 4 de agosto de 1998, el tribunal de instancia emitió una resolución en la que mantuvo la pensión *685 alimentaria de $743.32 mensuales impuesta a Abril por la Oficial Examinadora. No conforme con dicha determinación, el 24 de agosto de 1998 Abril presentó una "Moción Solicitando Reconsideración". Dicha moción fue declarada sin lugar por el tribunal de instancia mediante sentencia emitida el 25 de agosto de 1998, la que mantuvo, a su vez, la pensión alimentaria de $743.32 de conformidad con la resolución del 4 de agosto de 1998.
Ante los argumentos de Abril de que éste ya no operaba el negocio conocido como Thermo Tecnical, el juzgador de instancia manifestó lo siguiente:

"Ciertamente se nos hace difícil creer que una persona que tenga un negocio lucrativo y que genere o tenga en nómina una cantidad razonable de dinero opte por cerrarlo cuando las expectativas eran de generar mayores ingresos, hecho que no demuestra con su nuevo trabajo. Por el contrario, pretendía demostrar que generaba menos ingresos."

El 5 de noviembre de 1998, Abril presentó ante este Tribunal un recurso de apelación. En el mismo alegó que erró la Examinadora al no referir el caso para el trámite ordinario por ser éste uno complejo y al imputarle al apelante un ingreso de $2,000.00 mensuales basada, únicamente, en una especulación.
El 8 de diciembre de 1998, González presentó una "Moción de Desestimación". Dicha moción fue declarada sin lugar por este Tribunal mediante resolución emitida el 10 de mayo de 1999. En esa misma resolución, autorizamos la transcripción de la prueba oral de los procedimientos ante el tribunal de instancia.
Luego de examinar la totalidad del expediente, este Tribunal está en posición de resolver.
n
El Tribunal Supremo ha establecido que los casos relacionados con alimentos de menores están revestidos del más alto interés público, López vs. Rodríguez 121 D.P.R. 23, 28, (1988). Esta obligación está consagrada en los Artículos 118, 143 y 153 del Código Civil, 31 L.P.R.A. Secciones 466, 562 y 601, respectivamente, e incluye "todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia," Artículo 142 del Código Civil, 31 L.P.R.A. Sección 561.
La Ley Especial de Sustento de Menores, Ley 5 de 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. Sección 501 et seq. (Ley Número 5), tiene como propósito lograr que los padres o las personas legalmente responsables contribuyan, en la medida en que sus recursos lo permitan, a la manutención y bienestar de sus hijos o dependientes mediante el fortalecimiento de los sistemas y agilización de los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de las pensiones alimentarias, 8 L.P.R.A. Sección 502.
La Ley Número 5, supra, dispone en la Sección V, Artículo 13, que el Oficial Examinador tendrá autoridad para celebrar vista, recibir prueba y recomendar al tribunal que pensión alimentaria fijar como resultado de las guías aprobadas a tales fines, 8 L.P.R.A. Sección 512. La pensión alimentaria resultante de la aplicación de las guías antes mencionadas tendrá la presunción de ser justa, adecuada y en el mejor interés del menor. Competerá al que impugna la pensión alimentaria, rebatirla mediante prueba admisible en derecho, Sección VI, Artículo 19, Ley Número 5, supra, 8 L.P.R.A. Sección 518.
La norma general avalada por nuestro Tribunal Supremo es que la modificación de la cuantía de la pensión alimentaria procede cuando, el que la promueve demuestra que han ocurrido cambios sustanciales sobre la capacidad del alimentante para cumplir con su responsabilidad, Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61, 78 (1987). Si a base de la evidencia presentada queda determinado que la aplicación de las guías resulta en una pensión alimentaria injusta o inadecuada, así quedará constado en la resolución o sentencia que sea emitida. En tal circunstancia, en lugar de utilizar las guías, la pensión será determinada a base de una serie de factores *686 que el tribunal aplicará discrecionalmente. Entre dichos factores la Ley Número 5 enumera los siguientes: los recursos económicos de los padres y el menor; la salud física y espiritual del menor y sus necesidades; el nivel de vida que hubiera disfrutado el menor de haber quedado intacta la familia; las consecuencias contributivas para las partes; y, las contribuciones no monetarias de cada padre al cuidado y bienestar del menor. El juzgador de instancia deberá hacer constar en la resolución cuál habría sido el monto de la pensión de haber aplicado las guías, 8 L.P.R.A. Sección 518.
La Ley Número 5 define, además, en su Artículo 2, 8 L.P.R.A. Sección 501, el concepto.de ingresos. Este concepto es considerado como uno sumamente amplio y extenso, Sarah Torres Peralta, La Ley Especial de Sustento de Menores de 1994 y el derecho de alimentos en Puerto Rico San Juan, Publicaciones STP, Inc. Edición Especial 1997, página 2.5. El mismo comprende lo siguiente: cualquier ganancia o beneficio fruto de sueldos o compensación por servicios personales, profesiones, oficios, industrias, negocios, comercio o ventas; todo ingreso derivado de intereses, rentas, dividendos, beneficios de sociedad; compensaciones por desempleo, retiro, incapacidad, y pensiones, entre otras cosas.
Por otro lado, el Artículo 19 de la Ley Número 5, indica, en su segundo párrafo, que para la determinación de los recursos económicos del alimentante serán tomados en consideración, además del ingreso neto ordinario, el capital o patrimonio total del alimentante, 8 L.P.R.A. Sección 518. En ese mismo espíritu, ha sido desarrollado el concepto de ingresos imputados. Según nos dice la Leda. Sarah Torres Peralta, el concepto de imputación de ingresos al alimentante hace referencia a aquellas partidas que, aunque no le proveen ingresos directos en dinero al alimentante, son pertinentes para la determinación de su ingreso bruto. Entre las partidas a ser consideradas, dicha autora menciona como ejemplo la reducción voluntaria de ingresos por parte del alimentante como mecanismo para tratar de minimizar o, en ocasiones, eliminar completamente la obligación alimentaria; el dinero aportado por terceros al alimentante mediante beneficios no monetarios o pagos indirectos, como pagarle la renta, permitirle el uso del automóvil o mantenerlo gratuitamente en el hogar de ese tercero, entre otros, Id., a las páginas 2.26-2.27.
El concepto de ingresos imputados también ha sido examinado por nuestro Tribunal Supremo. En López vs. Rodríguez, supra, nota al calce 12, a la página 32, dicho Tribunal reconoció que el tribunal debe, al hacer la determinación de ingresos de un alimentante, tomar en consideración la economía subterránea que existe en Puerto Rico. Dicho Tribunal añade que el foro de instancia al determinar la capacidad económica de un alimentante para proveer alimentos, no está limitado a considerar únicamente evidencia testifical y documental sobre ingresos, Id., a la página 33. Puede, también, "considerar aspectos tales como el estilo de vida que lleva el alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso," Id.
Por otro lado, el Tribunal Supremo ha indicado, además, que al analizar la capacidad económica del alimentante, tanto el examinador de pensiones alimentarias como el juez de instancia, deberán tomar en cuenta todos los ingresos devengados por el alimentante aunque los mismos no aparezcan informados en la Planilla de Información Personal y Económica, Rodríguez Rosado v. Zayas Martínez, 133 D.P.R. 406, 412 (1993). En fin, el tribunal de instancia, a base de la prueba circunstancial sometida ante su consideración, puede inferir que el alimentante cuenta con medios suficientes para cumplir con la obligación alimentaria que le haya sido impuesta, López v. Rodríguez supra, a la página 33.
La norma de derecho con respecto a evidencia circunstancial es que procede dar un hecho como probado a base de una inferencia cuando hay una base racional entre el hecho establecido y el inferido, Marcelo v. Hettinger, 92 D.P.R. 411, 427 (1965).
Ill
De ordinario, los tribunales apelativos, en su función revisora, no habrán de pasar juicio sobre la credibilidad de los testimonios ofrecidos ante el foro de instancia y sustituirlo por el criterio propio. Esto es así, *687 ya que, el tribunal de instancia es el foro ante el cual declararon los testigos y el que tuvo la oportunidad de apreciar el comportamiento, evaluar la veracidad del testimonio y dirimir cualquier conflicto que surgiera en el proceso, Garage Rubén, Inc. v. Tribunal Superior, 101 D.P.R. 236, 243 (1973); Ramos Acosta v. Caparra Dairy, Inc., 113 D.P.R. 357, 365 (1982); Pueblo v. Rodríguez Román, 128 D.P.R. 121, 128 (1991); Pueblo v. Chévere Heredia, 95 J.T.S. 115, a la página 135.
A la luz de lo anterior, los tribunales apelativos no intervendrán con las determinaciones del foro de instancia a menos que sea demostrado que actuó con pasión, peijuicio, parcialidad o error manifiesto, Pueblo v. Miranda Ortiz, 117 D.P.R. 188, 191 (1986); Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987); Levy v. Autoridad de Servicios Públicos, 135 D.P.R. 382, 400 (1994).
En el caso de autos, el tribunal de instancia pasó juicio sobre la credibilidad de los testigos y la evidencia que tuvo ante sí. Abril no nos convenció que dicho tribunal haya actuado con pasión, peijuicio, parcialidad o que haya cometido error manifiesto.
Por otro lado, tampoco proceden las alegaciones de Abril de que la Oficial Examinadora debió referir el caso para trámite ordinario ante la complejidad del mismo. Este Tribunal no encontró tal complejidad, por el contrario, la Oficial Examinadora actuó dentro de los parámetros que fija la Ley Número 5, supra.
IV
Por los fundamentos antes expuestos, CONFIRMAMOS la determinación del Tribunal de Primera Instancia.
Lo acordó y manda el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General