Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| | | |
|---|---|---|
| ALCIDY MALDONADO SANTANA<br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br>Recurrida | TA2025RA00067 | *Revisión Judicial* procedente del Programa de Pre-reinserción del Departamento de Corrección y Rehabilitación |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de octubre de 2025.

a.

Comparece por derecho propio y *en forma pauperis* el Sr. Alcidy Maldonado Santana (Sr. Maldonado o recurrente), quien se encuentra confinado, solicitando la revocación del resultado de su *Evaluación programa de pre-reinserción,* emitida por el Departamento de Corrección y Rehabilitación, (DCR o recurrido), el 10 de febrero de 2025, aunque notificada el 12 de mayo de 2025. En la referida *Evaluación* el DCR emitió una determinación de *No Favorable* para que el Sr. Maldonado se beneficiaria del *Programa de Reinserción,* (el Programa), por causa de *no contar con un plan de salida viable*[1].

Inconforme, el recurrente instó una petición de reconsideración ante la misma agencia el 20 de mayo de 2025[2]. En lo pertinente, objetó la conclusión de que *no contara con un plan de salida viable,* pues, en síntesis, no fue evaluado o investigado el hogar que había solicitado para su salida, el de su

---

[1] Anejo del recurso de revisión judicial.

[2] A pesar de que resultaba necesario para verificar nuestra jurisdicción, el recurrente no incluyó la referida petición de reconsideración como parte del recurso de revisión judicial. No obstante, y extendiendo hasta lo máximo el principio de que debemos resolver los casos en los méritos, y en consideración al estado de confinamiento del recurrente, ordenamos *motu proprio* que se nos remitiera copia del expediente administrativo, y de allí surge la solicitud bajo discusión.

***Amigo*** *Consejero*, Sr. James Rodríguez Tirado, agente de la Policía de Puerto Rico por más de 20 años, del cual refirió dirección residencial. Afirmó que esta fue la información que le proveyó a la Socio Penal el día en que fue referido para evaluación del Programa.

En respuesta, el 23 de junio de 2025, le fue notificada el Sr. Maldonado una *Resolución* del DCR, denegando la Solicitud de reconsideración. En este dictamen denegatorio, el DCR enumeró una serie de hechos, entre lo cuales expresamente incluyó el fundamento por el cual el recurrente había instado la petición de reconsideración, el que se investigara su plan de salida para residir con un amigo. Luego, en su *Conclusiones de derecho*, la agencia recurrida explicó que no cumplía con el *Criterio de elegibilidad #16*, según el cual el confinado o **un familiar** debían estar en disposición de sufragar los costos asociados a la Supervisión Electrónica. No obstante, también se indicó que el confinado debía solicitar a su Técnico Sociopenal un nuevo referido para evaluar su caso en los méritos.

Es así como, inconforme, el Sr. Maldonado acude ante nosotros, aduciendo que el DCR incidió al no permitirle beneficiarse del Programa al presuntamente no contar con un hogar viable. En específico, esgrime haberle dado dos direcciones Socio Penal para que fueran consideradas como hogares viables para su salida, que no fueron investigadas: 1) la de su amigo James Rodríguez Rosado; y 2) la de su hijo, Kelvyn M. Donado Maldonado Rosado.

Luego de que requiriéramos la comparecencia del Procurador General de Puerto Rico, en representación del DCR, este presentó *Escrito en cumplimiento de resolución*. Este razonó que la reglamentación que dirige las determinaciones sobre quién se puede beneficiar del Programa exige que el hogar que resulte viable para que se conceda el privilegio tiene que ser el de un familiar, no el de un amigo. Además, advirtió que el recurrente vino a mencionar por primera vez el hogar de su hijo como viable en esta etapa apelativa, sin haberle concedido oportunidad al DCR de considerar dicha información. Tiene razón.

b.

Según es sabido, los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que, estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud,* 210 DPR 79, 87-89 (2022); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022). Es por ello que tales determinaciones suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd.*  No obstante, tal norma no es absoluta, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

En *Torres Rivera v. Policía de Puerto Rico*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 115; *OEG v. Martínez Giraud*, supra, pág. 90. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *Super Asphalt v. AFI y otro,* supra, pág. 819-820.

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *Hernández Feliciano v. Mun. Quebradillas*, supra; *OEG v. Martínez Giraud*, supra*;* pág. 89; *Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Batista, Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.

Finalmente, nuestra más Alta Curia ha expresado que, conforme lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *Íd.* págs. 90-91.

### A. *Órdenes Administrativas 2018-07 y 2023-03 del DCR*

Mediante la aprobación del Plan de Reorganización Núm. 2 de 2011, conocido como el Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, 3 LPRA, Ap. XVIII, Art. 1 *et seq.* (Plan Núm. 2-2011)*,* se decretó como política pública "la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o

transgresor, a fin de fomentar su reincorporación a la sociedad". 3 LPRA, Ap. XVIII, Art. 2. Además, el Artículo 16 del Plan Núm. 2-2011, dispone lo siguiente:

> El Secretario establecerá mediante reglamento los objetivos de cada programa de desvío, cómo habrán de operar, los criterios y condiciones para la concesión de dicho privilegio, así como también los criterios, condiciones y procesos que habrá de seguirse para la revocación del privilegio y administrará los programas de desvío donde las personas convictas puedan cumplir parte de su sentencia fuera de la institución correccional.
>
> [. . .]. 3 LPRA, Ap. XVIII, Art. 16.

A tenor con lo anterior, el DCR creó el *Programa Integral de Reinserción Comunitaria,* (el Programa) y, consecuentemente, adoptó la OA-2018-07, intitulada *Programa para la Pre Reinserción a la Libre Comunidad.* La referida orden, se promulgó a los fines de velar que "los miembros de la población correccional se adapten nuevamente a la vida en la libre comunidad, prepararlos para que puedan integrarse en la vida laboral, se conviertan en personas independientes y productivas para nuestra sociedad y reconozcan que se encuentran ante una nueva oportunidad en sus vidas."[3]

Con el propósito aludido, el DCR estableció por medio de la referida orden administrativa los criterios de elegibilidad que debían cumplir los miembros de la población correccional para poder beneficiarse del referido programa, así como varios criterios de exclusión, dirigidos específicamente a miembros de la población correccional que extinguieran sentencia por ciertos delitos específicos. No obstante, dicha OA 2018-07 fue derogada el 7 de septiembre de 2023, con la adopción de la orden administrativa 2023-03, (OA 2023-03), intitulada *Proyecto para la Pre Reinserción a la Libre Comunidad* (Proyecto para la Pre Reinserción). A través de la OA 2023-03, el DCR adoptó nuevos criterios de elegibilidad, al igual que parámetros de exclusión para la participación de los miembros de la población correccional. En cuanto a los requisitos que debe exhibir el miembro de la población que solicite los

---

[3] Acápite I de la OA 2018-07 (derogada).

beneficios del Proyecto para la Pre Reinserción, la OA 2023-03 consigna los siguientes:

1. No tener resoluciones administrativas disciplinarias en su contra durante los últimos seis (6) meses. Tampoco puede tener procesos disciplinarios pendientes de resolver.

2. Estar clasificados en custodia mediana o mínima.

3. No tener pendiente procesos criminales ante los tribunales.

4. Podrá estar disfrutando de pases familiares sin custodia.

5. Haber satisfecho la Pena Especial impuesta o poseer un plan de pago, conforme a la Ley Núm. 183-1998, según enmendada, conocida como "Ley de Compensación a las Víctimas de Delito".

6. Debe estar en cumplimiento con lo dispuesto en las siguientes leyes:

   a) Ley Núm. 175-1998, según enmendada, conocida como "Ley del Banco de Datos de ADN de Puerto Rico".

   b) Ley Núm. 243-2011, según enmendada, "Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores".

7. Deberá restarle diez (10) años o menos para cumplir el mínimo de la sentencia.

8. Debe estar cumpliendo con el Plan Institucional asignado favorablemente y presentar buenos ajustes institucionales. Esto debe estar certificado por el Técnico de Servicios Sociopenales y contar con el visto bueno del supervisor.

9. En los casos de los miembros de la población correccional que tengan historial de uso de sustancias controladas o alcohol, deberán haberse beneficiado de tratamiento contra la adicción.

10. En los casos de los miembros de la población correccional convictos por infracción a la Ley Núm. 54 del 15 de agosto de 1989, conocida como la "Ley para la Prevención e Intervención con la Violencia Doméstica" o de algún delito de naturaleza sexual, previo a ser considerados para participar del Proyecto, deberán haberse beneficiado del programa Aprendiendo a Vivir Sin Violencia y contar con la recomendación favorable del terapista/psicólogo.

11. En los casos en que el miembro de la población correccional haya incurrido en el delito de fuga o en la comisión de un nuevo delito, deberá haber transcurrido un mínimo de tres (3) años desde la fecha en que fue sentenciado. Además, tendrá que haber completado el tratamiento recomendado en su Plan Institucional.

12. En los casos en que el miembro de la población correccional haya incurrido en violación a las normas y condiciones de algún programa previo, podrá ser considerado solamente por

una segunda ocasión adicional, luego de haber transcurrido un mínimo de dieciocho (18) meses desde el incumplimiento. Además, tendrá que haber completado el tratamiento recomendado en su Plan Institucional. No se considerará para participar del programa si incurrió en la comisión de un nuevo delito durante el disfrute del privilegio.

13. No constituir un riesgo para su propia seguridad, la de sus compañeros, la comunidad y las víctimas o partes perjudicadas.

14. Tener una actitud positiva y tener la disposición genuina de trabajar, estudiar, rendir las tareas que se le requieran y de ser orientado en las áreas que sean necesarias.

15. Deberá estar en disposición y actitud favorable para que el patrono, la institución educativa o el centro de tratamiento, pueda darle seguimiento y supervisión a su trabajo, estudios o tratamiento, según aplique.

16. Estar dispuesto (el confinado o un familiar) a sufragar los costos que conlleve su Supervisión Electrónica, la cual será constante mientras participe del Proyecto, y cualquier otro gasto en el cual incurra, entre ellos, los gastos básicos por los servicios de agua y luz, alimentos y vestimenta.[4]

## I.   Aplicación del Derecho a los hechos

a.

Según adelantamos en el recuento procesal, el Sr. Maldonado juzga que deberíamos revocar la determinación administrativa recurrida, al denegar su participación en el Programa por causa de no contar con un hogar viable, esgrimiendo que el DCR no investigó la segunda alternativa de hogar viable que ofreció, la de su hijo.

Del argumento alzado ante nosotros por el Sr. Maldonado resulta evidente que no cuestiona propiamente el fundamento legal utilizado por el DCR para denegar su participación en el Programa, es decir, que el hogar viable solo puede ser el de un familiar, no el de un amigo. Lo que esgrime el recurrente como razón para revocar la determinación del CDR es, reiteramos, que este no evaluó o investigó la información que presuntamente también le ofreció a la *Socio Penal* sobre su hijo, que sí es su familiar, como posible hogar viable.

---

[4] Acápite IV(A) de la OA 2023-03.

b.

Por una parte, según fue citada en la exposición de Derecho, la OA 2023-03 contiene los criterios que el DCR debe sopesar al evaluar si concede el privilegio contenido en el *Proyecto para la Pre Reinserción a la Libre Comunidad,* entre los cuales se encuentra la consideración sobre si el hogar viable es de un familiar. En consecuencia, cuando el CDR denegó el privilegio al recurrente, por causa de no haber identificado un hogar viable, pues refirió para este propósito información de un amigo, en lugar de la de un familiar, dicha agencia aplicó el derecho que correspondía.

Por otra parte, y tal como lo señaló el Procurador General en su escrito en oposición, examinado todo el expediente administrativo, **no** surge en ninguna parte de la documentación que contiene, que el Sr. Maldonado le hubiese dado información de su hijo al DCR para ser considerada como alternativa de hogar viable. Contrario a lo que se alega por primera vez ante este Tribunal de Apelaciones, cuando el Sr. Maldonado presentó la *Moción en solicitud de reconsideración* ante el DCR, lo que surge de su inciso cuarto (4) es que **solo ofreció como hogar viable el de su *Amigo Consejero,* el Sr. Rodríguez Tirado, sin nombrar a su hijo como alternativa**. Por tanto, luego de haber examinado el expediente administrativo, quedó confirmado que, fue en esta etapa apelativa que el recurrente esgrimió por primera vez el haber sugerido al DCR la posibilidad de considerar a su hijo como hogar viable.

Según se sabe, es doctrina de la práctica apelativa que *los tribunales se abstendrán de adjudicar cuestiones no planteadas ante el Tribunal de Primera Instancia. Sánchez Ruiz v. Higuera Pérez,* 203 DPR 982, 993 (2020). En consecuencia, *nos abstendremos de adjudicar cuestiones no planteadas en primera instancia. Trabal Morales v. Ruíz Rodríguez,* 125 DPR 340, 351 (1990).

Esta también constituye la norma respecto a los asuntos que no fueron planteados en una vista adjudicativa llevada a cabo en el foro administrativo. Así,en *Garage Rubén Inc., v. Tribunal Superior,* 101 DPR 236,242 (1973), nuestro Tribunal Supremo determinó no considerar una alegación que se

levantó por primera vez en la etapa apelativa, pues no fue presentada antes al foro administrativo para su consideración. Sobre ello, el alto Foro zanjó que correspondía al foro administrativo resolver la referida controversia en primera instancia, con la prueba correspondiente, antes de presentarla a nivel apelativo. *Íd.*

En consecuencia, estamos impedidos de considerar por primera vez una información, sobre el hijo del recurrente como hogar viable, que el DCR no tuvo la oportunidad de considerar y resolver.

En definitiva, no apreciamos razón alguna para intervenir con la deferencia que debemos a los dictámenes administrativos.

**Parte dispositiva**

Por los fundamentos antes expuestos los que hacemos formar parte de este dictamen, se *Confirma* la resolución recurrida.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones